IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Frenchis Gerald Abraham, )<br>)<br>           Plaintiff, )<br>)<br>     vs. )<br>)<br>RN Keisha S. Yarborough, MD Ronald )<br>G. Steen, Lt. A. Davis, and Lt. )<br>J. Durant, )<br>)<br>           Defendants. )<br>_____ ) | Civil Action No. 6:13-769-RMG-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendants' motion for summary judgment (doc. 29). The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Local Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the district court.

## BACKGROUND

The plaintiff is currently incarcerated at Broad River Correctional Institution within the South Carolina Department of Corrections ("SCDC"). The plaintiff filed a complaint claiming that his constitutional rights were violated while he was incarcerated at Lee Correctional Institution ("LCI"). Specifically he alleges that the defendants were deliberately indifferent to his serious medical needs[1] by not providing him a mattress for approximately 20 days after he returned from surgery at the infirmary at Kirkland Correctional Institution ("KCI"). At the time of the events alleged in the complaint,

---

[1] The allegations can also be considered as a conditions of confinement claim and will be addressed herein accordingly.

defendants Dr. Steen, Lt. Davis, and Lt. Durant were employees of SCDC. Defendant Nurse Yarborough was employed by Medustrial Healthcare Staffing as a registered nurse and provided nursing services to inmates at LCI.

On August 21, 2013, the defendants filed a motion for summary judgment (doc. 29). By order filed August 22, 2013, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), the plaintiff was advised of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. After being granted one extension of time on September 26, 2013, the plaintiff filed a response in opposition (doc. 38) to the motion for summary judgment on October 29, 2013.

## **FACTS PRESENTED**

On January 18, 2012, LCI officers attempted to enter the plaintiff's cell to search for contraband. According to Lt. Davis and Lt. Durant, the plaintiff and his cellmate used batting from a mattress in the cell to block the food service flap against chemical munitions being sprayed into the cell. As a result of this incident, the plaintiff received a disciplinary charge for possessing a cell phone (doc. 29-4, Davis aff. ¶¶ 3, 4, 5; doc. 29-5, Durant aff. ¶¶ 4, 5, 6). Neither Lt. Davis nor Lt. Durant knows whether the destroyed mattress belonged to the plaintiff or his cellmate, but if it belonged to the plaintiff, he would have had to pay for a replacement (Davis aff. ¶¶ 7-9; Durant aff. ¶¶ 7-9).

Two months later, on March 14, 2012, the plaintiff was transferred to KCI, where he underwent a splenectomy by an outside physician, Dr. Craft (comp., p. 3; doc. 1-1, pp. 1-4). The plaintiff remained in the KCI infirmary following the surgery until March 23rd, when he was transferred back to LCI. Prior to the plaintiff's discharge, Dr. Craft's associate, Dr. Rubin, prepared a post-op record describing the operation and stating that the plaintiff could "return to his institution but he must have a mattress if he is returned" (doc. 1-2, p. 1). This record was electronically signed by Dr. Rubin on March 22, 2012, but a handwritten notation indicates that it was not faxed (presumably from Dr. Rubin's office to the KCI infirmary) until March 26, 2012, three days after the plaintiff had already returned to LCI (*id.*). While in the KCI infirmary, the plaintiff was under the care of Dr. Anthony B. Elkins

2

(doc. 29-2, Yarborough aff. ¶ 8). The plaintiff's March 23rd discharge report from KCI (doc. 29-2, p. 10) provided that the plaintiff was to receive Percocet and other medications, but did not mention a mattress.

Upon his return intake to LCI on March 23rd, the plaintiff was assessed by Nurse Yarborough, and he asked her whether he would receive his medications and a mattress. As alleged by the plaintiff, Nurse Yarborough confirmed the order for medication, but noted there was no such order for a mattress (comp., p. 3). The medical records show that days later Dr. Steen signed off on Nurse Yarborough's March 23rd encounter entry, but there is no record that Dr. Steen himself encountered the plaintiff. Following his visit with Nurse Yarborough, the plaintiff was escorted to the Special Management Unit ("SMU"). The plaintiff alleges that there he asked Lt. Davis and Lt. Durant if he would receive a mattress, and he claims they told him that he would not (*id*.). The plaintiff alleges that later he requested of an other officer permission to move to a one-man cell on the ground floor of the SMU so that he would not have to sleep on a top bunk, which was granted (*id.* p. 4). His complaint further indicates that he was also informed at that time that a mattress could not be located, and he was issued a "thin layer of cotton" and forced to sleep on a concrete slab with no sheets (*id*.).

The plaintiff alleges that he continued to inquire about his need for a mattress during his recovery and that the lack of a mattress caused him to endure "constant pain and suffering" (*id.* p. 4). Between March 23rd and April 9th, SCDC medical records show that the plaintiff had at least ten sick-call visits in follow-up to his surgery for surgical wound care and pain (doc. 1-3, pp. 7-9, encounters 203-216). Besides the March 23rd entry by Nurse Yarborough, the medical records do not reflect that a mattress for the plaintiff was discussed or considered. The plaintiff alleges that only after filing a grievance was he ultimately provided a mattress on April 11th, 20 days after returning to LCI (comp., p. 5).

In his complaint, the plaintiff alleges that Nurse Yarborough and Dr. Steen had reason to know that the plaintiff's outside treating physician, Dr. Rubin, had ordered that the plaintiff be provided a mattress, and their failure to act to ensure the plaintiff was provided

3

a mattress constitutes deliberate indifference to his medical needs in violation of his constitutional rights (*id.*).  The plaintiff further claims that Lt. Davis refused to provide him a mattress in retaliation for the plaintiff filing numerous grievances and that Lt. Durant "knew of Lt. A. Davis' reason for denying the plaintiff a mattress and supported Lt. A. Davis' decision." (*id.*).  The plaintiff also contends that his post-surgical condition was "so obvious" and his need for a mattress "so easily recognizable" that Nurse Yarborough, Lt. Davis, and Lt. Durant should each be held liable for being deliberately indifferent to his serious medical needs.

In their motion for summary judgment, the defendants contend they were unaware that Dr. Rubin had ordered a mattress be provided to the plaintiff.  Gwendolyn Stokes, a nurse at LCI, reviewed the records regarding the plaintiff's medical treatment at LCI.  According to Nurse Stokes, there was no order requiring the plaintiff to have a mattress on the plaintiff's patient fact sheet or on his discharge information form presented to Nurse Yarborough on March 23, 2012 (doc. 29-3, Stokes aff. ¶¶ 4, 6, 9).  Nurse Stokes also reviewed post-op treatment notes from Drs. Craft and Rubin at Surgical Associates of South Carolina ("SASC") relating to post-surgical evaluations of plaintiff on March 22, 2012, April 5, 2012, and May 31, 2012 (*id.* ¶ 11).  Nurse Stokes states that the SASC note of March 22, 2012, regarding a doctor's order for a new mattress was faxed to LCI on March 26, 2012, and, therefore. Nurse Yarborough did not see the order at the time the plaintiff returned to LCI on March 23, 2012.  Even if Nurse Yarborough had seen the note, she would have been required to follow the orders of the discharging SCDC physician, Dr. Elkins, rather than those of SASC, an outside medical provider (*id.* ¶¶ 13, 15-17).  Nurse Stokes also states that the plaintiff made no complaints between the dates of March 23, 2012, and the date he was transferred to Broad River Correctional Institution ("BRCI"), June 7, 2012, to LCI medical staff or to the SASC physicians regarding pain or any other complication caused by not having a mattress for 20 days (*id.* ¶¶ 19-22).  She states that the plaintiff's medical records do not reflect that the plaintiff ever informed anyone in the LCI medical department that he no longer possessed the mattress he had been issued when

he arrived at LCI and that his recovery from the surgical procedure was normal (*id*. ¶¶ 26, 27).

Nurse Yarborough confirms Nurse Stokes' account with her affidavit. She states that she reviewed the plaintiff's discharge instructions from KCI and told the plaintiff that no mattress was ordered for him. (Yarborough aff. ¶¶ 8-11). She likewise states that she was unaware of Dr. Rubin's order that a mattress be provided, as it was faxed to LCI after her encounter with the plaintiff (*id*. ¶¶ 12-15).

According to Lts. Davis and Durant, they have no recollection of having a conversation with the plaintiff regarding his mattress. (Davis aff. ¶ 3; Durant aff. ¶ 4). Each also states that he never received a medical order requesting a mattress, nor did he observe that the plaintiff appeared in serious medical need of a mattress (Davis aff. ¶ 10; Durant aff. ¶ 10).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, thenon-moving party, to survive themotion for summaryjudgment, maynot

5

rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the the the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

***Eleventh Amendment Immunity***

The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted).  Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir.1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted).  Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.* The defendants Dr. Steen, Lt. Davis, and Lt. Durant are employees of the SCDC.  As a result, the defendants are entitled to Eleventh Amendment immunity to the extent the plaintiff has alleged claims for monetary relief against them in their official capacities.

***Dr. Steen***

The plaintiff's complaint contains no specific factual allegations against Dr. Steen, other than he signed off on the information entered in the SCDC computer system

6

regarding the plaintiff's encounter with Nurse Yarborough in the LCI medical department on March 23, 2012 (comp., p. 7). The plaintiff further alleges that defendant Steen had "full access" to his medical chart and should have known that his outside treating physician, Dr. Rubin, had ordered that plaintiff be provided a mattress (*id.*). "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given *pro se* complaints." *Lewis v. Lappin,* No. 3:10cv426, 2011 WL 2414418, at *2 (E.D. Va. June 13, 2011) (citation omitted). *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) ("Having failed to allege any personal connection between [the defendant] and any denial of [the plaintiff's] constitutional rights, the action against him must fail.").

In this case, while plaintiff specifically alleges that defendant Steen failed to act on his behalf and suggests defendant Steen chose to disregard the order of the outside treating physician, the plaintiff fails to demonstrate that defendant Steen ever had any direct contact with him. Moreover, the plaintiff has not offered any evidence that tends to show that defendant Steen had any knowledge, direct or indirect, of Dr. Rubin's suggestion that the plaintiff be provided a mattress. Furthermore, the plaintiff has provided absolutely no evidence that Dr. Steen had any knowledge that the plaintiff did not already have a mattress. Therefore, the plaintiff has failed to establish the requisite degree of personal involvement by defendant Steen.

To the extent the plaintiff seeks to hold Dr. Steen liable in his supervisory capacity, the doctrine of respondeat superior generally is inapplicable to Section 1983 actions. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge*, 550 F.2d at 928-29. The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit

7

authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). The plaintiff has failed to make the required showing here. Accordingly, Dr. Steen is entitled to summary judgment.

***Deliberate Indifference to Serious Medical Needs / Conditions of Confinement***

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). With regard to the objective component, a medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990). "Plaintiffs must also show the subjective component-deliberate indifference. An officer is deliberately indifferent only when he 'knows of and disregards' the risk posed by the serious medical needs of the inmate." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

The defendants argue in effect that Nurse Yarborough was merely following the orders on the discharge sheet in advising the plaintiff that no mattress would be provided. Further, Nurse Yarborough notes in her medical record Encounter 203 that the plaintiff was

not in "acute distress" when she saw him. However, the undersigned finds that the record presents a genuine issue of material fact precluding summary judgment on this issue. It is undisputed that the plaintiff was recovering from surgery and that he would need future medical care as part of his recovery. It is also undisputed that Nurse Yarborough knew that (*see* Encounter 203), and that she obviously knew that he did not have a mattress. The record is silent as to whether she had the authority to issue him a mattress then and there, but she clearly had the ability to raise the question to those who did have such authority, and the record is likewise silent on any such action on her part. The plaintiff had serious medical needs following his surgery, as revealed by the medical records showing his numerous visits with the medical staff related to his recovery. Accordingly, a question of fact exists as to whether Nurse Yarborough knowingly disregarded the plaintiff's serious medical needs by not acting to provide him with a mattress during his recovery.

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To succeed on any Eighth Amendment claim for cruel and unusual punishment regarding the conditions of his confinement, a prisoner must prove that he was deprived of a basic human need and that prison officials were deliberately indifferent to that deprivation. *See Strickler v.* Waters, 989 F.2d 1375, 1379 (4th Cir. 1993). The first prong of the *Strickler* analysis requires an objective showing that the deprivation was sufficiently serious, such that significant physical or emotional injury resulted from it, while the second prong is a subjective test requiring evidence that prison officials acted with a sufficiently culpable state of mind. *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

Lt. Davis and Lt. Durant argue that they were never aware of any medical order or directive to provide the plaintiff with a mattress, and a review of the filed medical reports supports this contention, as neither is named. These defendants state in their affidavits that the plaintiff's "outward physical appearance [was not] obviously indicative of someone that was in serious medical need of a mattress" (Davis aff. ¶ 10; Durant aff. ¶ 10). The remaining record before the court is contradictory as to whether either officer knew that the plaintiff requested a mattress to relieve his purported post-surgical discomfort. The plaintiff has

submitted a declaration subject to the penalties of perjury stating that he discussed the matter a number of times with both Lt. Davis and Lt. Durant, to no avail (doc. 38-2, pl. decl. ¶¶ 8, 9, 12, 14, 15)  Both defendants testify in unison that they have "no independent recollection of ever having any conversation with Plaintiff regarding his alleged need for, or request for, a mattress" (Davis aff., ¶ 3; Durant aff., ¶ 4).  However, both men were involved in the search of the plaintiff's cell prior to his surgery in which a mattress was destroyed  (Davis aff., pp. 5-13), though neither can recall whether the mattress belonged to the plaintiff or his cellmate (Davis aff. ¶ 9; Durant aff. ¶ 9). Importantly, both Lt. Davis and Lt. Durant were assigned to the SMU where plaintiff was housed before and after his surgery, and both were aware that he had undergone surgery (Davis aff. ¶ 4; Durant aff. ¶ 5).  Yet neither officer offers any information to contradict the plaintiff's allegation that he was forced to sleep on a concrete slab with a thin piece of cotton and no sheets after his surgery.

The undersigned finds that Lt. Davis and Lt. Durant have not presented sufficient information to conclusively resolve the material factual issues presented in this case concerning them and recommends that summary judgment be denied as to each of them on the plaintiff's Eighth Amendment claim.

*Retaliation*

The plaintiff claims that Lt. Davis was motivated by retaliation in denying him a mattress during his surgery recovery.  Claims of retaliation by inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." *Cochran v. Morris,* 73 F.3d 1310, 1317 (4th Cir.1996); *Adams v. Rice,* 40 F.3d 72, 74 (4th Cir.1994) *cert. denied,* 514 U.S. 1022 (1995).  To succeed on his claim, an inmate must allege facts sufficient to demonstrate that the alleged retaliatory act "was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams,* 40 F.3d at 75. Thereafter, the inmate must also demonstrate that he suffered some adverse impact or actual injury. *ACLU of Md., Inc. v. Wicomico County, Md.,* 999 F.2d 780, 785 (4th Cir. 1993) (citing *Huang v. Bd. of Governors of Univ. of N.C.,* 902 F.2d 1134, 1140 (4th

10

Cir.1990)). Additionally, an inmate must come forward with specific evidence "establish[ing] that but for the retaliatory motive, the complained of incident … would not have occurred." *Woods v. Smith,* 60 F. 3d 1161, 1166 (5th Cir.1995); *see also Collinson v. Gott,* 895 F.2d 994, 1002 (4th Cir.1990).

The Fourth Circuit Court of Appeals has previously recognized the long-standing judicial "hands-off" policy toward problems of prison administration. *Sweet v. South Carolina Dept. of Corrections,* 529 F.2d 854, 859 (4th Cir.1975) (en banc). "Prison officials must be accorded latitude in the administration of prison affairs." *Id.* (citing *Cruz v. Beto*, 405 U.S. 319, 321 (1972)). As a result of the judiciary's lack of expertise in prison administration, "prison officials must be accorded latitude in the administration of prison affairs … and their judgments are entitled to great weight." *Id.* (internal citations omitted).

In this case, the plaintiff alleges that Lt. Davis retaliated against him for filing numerous grievances against him. In his response to the motion for summary judgment, the plaintiff attaches copies of grievances he filed against Lt. Davis, but he provides nothing other than his own speculation that Lt. Davis denied him a mattress as retaliation. Therefore, in light of the plaintiff's failure to present sufficient evidence of retaliatory motive on the part of Lt. Davis or any of the defendants, or of the existence of any injury suffered as a result of any alleged retaliatory conduct, the defendants are entitled to summary judgment on this claim.

***Conspiracy***

The plaintiff's also alleges that Lt. Davis and Lt. Durant conspired to violate his constitutional rights by denying him a mattress. Such allegations, without further evidence, are insufficient to establish a claim for civil conspiracy under 42 U.S.C. § 1983. To establish a civil conspiracy under § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in the deprivation of a constitutional right. *Glassman v. Arlington Cnty.*, 628 F.3d 140, 150 (4th Cir. 2010) (citing *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir.1996)). A plaintiff must come forward with specific evidence that each member of the alleged

conspiracy shared the same conspiratorial objective. *Hinkle*, 81 F.3d at 421. A plaintiff's factual allegations must reasonably lead to the inference that the defendants came to a mutual understanding to try to "accomplish a common and unlawful plan." *Id.* A plaintiff's allegations must amount to more than "rank speculation and conjecture," especially when the actions are capable of innocent interpretation. *Id.* at 422.

In this case, the plaintiff claims that Lt. Durant must have been conspiring with Lt. Davis against him because they both declined to provide a mattress for the plaintiff upon his return to SMU at LCI. The plaintiff's complaint contains no allegations that the defendants "came to a mutual understanding to try to accomplish a common unlawful plan." Furthermore, there are no allegations that either Davis or Durant took any affirmative actions to promote any kind of alleged conspiracy. Accordingly, summary judgment should be granted on the plaintiff's claims of civil conspiracy.

### *Injunctive Relief*

Injunctive relief is not appropriate in this case, as the plaintiff received a mattress on April 11, 2012, and has since been transferred from LCI to BRCI. Therefore, to the extent the plaintiff's complaint may be construed to contain some type of request for an order requiring specific action on the part of LCI administrative personnel or medical professionals, any such claims or requests for relief are moot.

## CONCLUSION AND RECOMMENDATION

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendants' motion for summary judgment (doc. 29) be granted as to Dr. Steen; as to the state employees in their official capacities;

as to the claims for civil conspiracy and retaliation; and as to any requested injunctive relief. The undersigned further recommends that the motion for summary judgment be denied as to the claim for deliberate indifference to serious medical needs against Nurse Yarborough and the conditions of confinement claim against Lt. Davis and Lt. Durant.

                s/ Kevin F. McDonald
                United States Magistrate Judge

January 31, 2014
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4$_{th}$ Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 300 East Washington Street
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).