IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

|  |  |
|---|---|
| Frenchis Gerald Abraham, ) | No. 6:13-cv-00769-RMG |
| ) |  |
| Plaintiff, ) | **ORDER** |
| ) |  |
| vs. ) |  |
| ) |  |
| RN Keisha S. Yarborough, MD Ronald G. ) |  |
| Steen, Lt. A. Davis, Lt. J. Durant, ) |  |
| ) |  |
| Defendants. ) |  |

This matter is before the Court on the Report and Recommendation ("R&R") of the Magistrate Judge (Dkt. No. 40), recommending that Defendants' motion for summary judgment be granted in part and denied in part. For the reasons stated below, the Court adopts the R & R in part and grants in part and denies in part Defendant's motion (Dkt. No. 29).

## I. BACKGROUND

Plaintiff brings this action pursuit to § 1983 alleging that Defendants were deliberately indifferent to his serious medical needs by not providing him with a mattress for approximately twenty days after he returned from a splenectomy at the infirmary at Kirkland Correctional Institutions.[1] The Magistrate Judge, correctly construing Plaintiff's *pro se* complaint liberally, construed Plaintiff's complaint to allege a conditions of confinement claim as well as a medical indifference claim. (*See* Dkt. No. 40 at 1 n.1). Plaintiff also alleges a civil conspiracy claim against all defendants and a retaliation claim against Defendant Davis. (Dkt. No. 1) The Magistrate Judge recommends that Defendants' motion for summary judgment be granted as to

---

[1] The facts are laid out in detail in the R & R. (*See* Dkt. No. 40 at 2-5). The Court adopts this portion of the R & R and does not repeat the facts in detail here.

(1) Plaintiff's civil conspiracy claim, (2) Plaintiff's retaliation claim against Defendant Davis (3) any claims for injunctive relief, (4) claims against Defendants in their official capacities and (5) claims against Defendant Steen. (*Id.* at 6-8, 10-12). The Magistrate Judge recommends that summary judgment be denied as to Plaintiffs' medical deliberate indifference claim against Defendant Yarborough and Plaintiff's conditions of confinement claim against Defendants Davis and Durant. (*Id.* at 8-10). Defendants Yarborough, Davis and Durant all filed timely objections to the R & R. (Dkt. Nos. 54, 56). Plaintiff did not file objections to the R & R.

## II. LEGAL STANDARD

### A. Report and Recommendation

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1).

This Court is charged with making a de novo determination of those portions of the R & R or specified proposed findings or recommendations to which objection is made. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting 28 U.S.C. § 636(b)(1)); *accord* Fed. R. Civ. P. 72(b). As to portions of the R & R to which no specific objection has been made, this Court "must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Id.* (quoting Fed. R. Civ. P 72 advisory committee note). Moreover, in the absence of specific objections to the R & R, the Court need

not give any explanation for adopting the Magistrate Judge's analysis and recommendation. *See Camby v. Davis*, 718 F.2d 198, 199-200 (4th Cir. 1983).

## B. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Only material facts–those "that might affect the outcome of the suit under the governing law"–will preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine, "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* At the summary judgment stage, the court must "construe the evidence, and all reasonable inferences that may be drawn from such evidence, in the light most favorable to the nonmoving party." *Dash v. Mayweather*, 731 F.3d 303, 310 (4th Cir. 2013). However, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Id.* at 311.

## C. Eighth Amendment Claims

The Eighth Amendment prohibits "the unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (quotations omitted). To prevail on an Eighth Amendment Claim, a prisoner must prove (1) that "the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)" and (2) that "the prison official acted with a sufficiently culpable state of mind (subjective component)." *E.g., Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

"The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quotations omitted). With regard to inadequate medical attention, the objective component is satisfied by a serious medical condition or need. *Id.* A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). With regard to a conditions of confinement claim, an inmate must "prove extreme deprivations of basic human needs or serious or significant pain or injury." *Smith v. Ozmint*, 578 F.3d 246, 255 (4th Cir. 2009) (quotations omitted); *see also Hudson*, 503 U.S. at 9 ("Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society . . . only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." ).

"Whether one characterizes the treatment received by the prisoner as inhuman conditions of confinement, failure to attend to his medical needs, or a combination of both," the same deliberate indifference standard applies to the subjective prong. *Helling*, 509 U.S. at 32 (quotations omitted). Deliberate indifference "entails something more than mere negligence"[2] but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A plaintiff

---

[2] Contrary to Defendant Yarborough's assertions, the fact that deliberative indifference involves less than mere negligence does not mean that Plaintiff must prove a negligence cause of action under South Carolina state law, including submitting an expert affidavit, to survive summary judgment. Plaintiff must show that there is an issue of fact as to the subjective and objective prongs of an Eighth Amendment claim.

must show that the official "acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.

### III. DISCUSSION

#### A. Conditions of Confinement Claim against Defendants Davis and Durant[3]

1. Objective Prong

With regard to Plaintiff's conditions of confinement claim, there is a question of fact as to whether Plaintiff's injury rises to the level of an Eighth Amendment violation. Defendants claim that they are entitled to summary judgment because Plaintiff has failed to present evidence of a "serious physical or emotional injury" resulting from his lack of mattress. (Dkt. No. 54 at 9). Defendants are correct that the Fourth Circuit has held that "in order to withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). However, the *Strickler* court was careful to note:

---

[3] The Court agrees that any medical indifference claim against Defendants Davis and Durant cannot survive summary judgment. Prison guards can be found to be deliberately indifferent to a serious medical need by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Smith v. Smith*, 589 F.3d 736, 738–39 (4th Cir.2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). Here, Plaintiff had follow-up medical care after his operation, including dressing changes (*see* Dkt. No. 1-2 at 2; Dkt. No. 1-3 at 4-8), and there is no evidence that Defendants interfered with this medical care. While a mattress was prescribed by Plaintiff's outside physician, there is no evidence that Defendants knew of this prescription and, thus, no evidence that they intentionally interfered with the prescription of a mattress.
The Court reads the R & R to recommend denying summary judgment as to the conditions of confinement claim (not a medical indifference claim) against Davis and Durant. (*See* Dkt. No. 40 at 13).

> At first blush, the standard that we embrace today might be thought to exclude instances where pain was suffered but no enduring injury resulted. We are satisfied, however, that in the unusual circumstance where such pain is sufficiently serious to rise to the level of a constitutional violation, it will either itself constitute a serious physical injury or will result in an emotional injury that would be cognizable under our standard.

*Id.* at 1381 n.6. Thus, pain that is sufficiently serious can rise to the level of a constitutional violation, even if the injury is not an enduring one. *See also Ozmint*, 578 F.3d at 255 (Plaintiff must "prove extreme deprivations of basic human needs or serious or significant pain *or* injury."). This is particularly true where pain is entirely unnecessary. As the Supreme Court explained in the context of medical indifference claims: "In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. . .The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).

Here, Plaintiff states that his pain was "excruciating" and kept him from sleeping. (Dkt. No. 1 at 4). A jury may ultimately choose not to believe Plaintiff's characterization of his pain. However, viewing the evidence in the light most favorable to Plaintiff and drawing every inference in his favor, a reasonable jury could find that having to sleep on a concrete slab without a mattress for twenty days following abdominal surgery caused sufficiently serious pain and injury as to offend contemporary standards of decency and amount to the denial of "the minimal civilized measure of life's necessities." *Hudson*, 503 U.S. at 9.

### 2. Subjective Prong

There is also an issue of facts as to whether the Defendants acted with deliberate indifference. While intent to harm or knowledge of harm is not necessary to show deliberate indifference, it is sufficient. Here, viewing the evidence in the light most favorable to Plaintiff, Defendants withheld Plaintiff's mattress with the intent to cause him pain.

Defendants have not advanced a penological purpose in denying Plaintiff a mattress. They have put forward testimony that all SCDC inmates are issued a mattress upon arrival (Dkt. No. 29-3 at 5), so absent some particular reason, Plaintiff should have had a mattress regardless of whether he was recovering from surgery. Defendants Davis and Durant state that *if* Plaintiff destroyed his mattress, he would have to pay for a replacement and there could be a delay in receiving the replacement mattress, but both are careful not to state that is was the actual reason for the delay. (*See* Dkt. No. 29-4 at 2; Dkt. No. 29-5 at 2). Indeed, the record suggests that Plaintiff eventually received a mattress because he filed a grievance. (Dkt. No. 1 at 5; Dkt. No. 1-5). Both Defendants Durant and Davis state that they have no personal knowledge as to whether Plaintiff destroyed his mattress and offer no evidence or even argument that Plaintiff's mattress was taken for a legitimate penological purpose. (*See* Dkt. No. 29-4 at 2; Dkt. No. 29-5 at 2). Defendants simply never offer a reason for their failure to provide a mattress and/or failure to inquire about Plaintiff's lack of mattress, when all inmates are routinely provided with a mattress and Plaintiff lacked one when he returned from abdominal surgery.

Plaintiff testifies that when he asked for a mattress Defendants Davis and Durant "just smirked" and that Defendant Davis stated the taking of his mattress was "personal" and "indefinite" (*see* Dkt. No. 1 at 3, 4). Plaintiff also states that in response to his requests for a

mattress, Defendant Davis told him that Plaintiff "needed to stop filing all that paperwork," referring to grievances against Davis, and that when he complained to Sgt. McBride and Cpl. Hickman about his lack of mattress, they told him that he "had to talk to Lt. Davis." (*Id.* at 4).

Viewing this evidence in the light most favorable to Defendants, they failed to provide him with a mattress as punishment because they suspected Plaintiff had destroyed his mattress. However, viewing this evidence in the light most favorable to Plaintiff, as the Court must do on this motion, Defendants' failure to provide a mattress was malicious and sadistic, in reprisal for Plaintiff's filing of grievances, and totally without penological justification. The Supreme Court has been clear that among the unnecessary and wanton inflictions of pain forbidden by the Eighth Amendment are "those that are totally without penological justification." *Hope v. Pelzer*, 536 U.S. 730, 737 (2002).

The Court also agrees with the Magistrate Judge, that if Plaintiff's testimony is believed by a jury, it could find that Defendants acted with deliberate indifference by ignoring Plaintiff's repeated complaints of pain and requests for a mattress. Thus, the Court denies summary judgment.

### 3. Qualified Immunity

Defendants Davis and Durant also claim that they are entitled to summary judgment based on qualified immunity. (Dkt. No. 54 at 10-15). Qualified immunity protects officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). There are two steps to the qualified immunity analysis: whether a constitutional violation occurred and whether the right violated was "clearly established" at the

time of the official's conduct. *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013). "[W]hile the purely legal question of whether the constitutional right at issue was clearly established is always capable of decision at the summary judgment stage, a genuine question of material fact regarding whether the conduct allegedly violative of the right actually occurred must be reserved for trial." *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005).

As explained above, the facts taken in the light most favorable to plaintiff, establish a constitutional violation. This violation is clearly established. The Supreme Court has long held that among the unnecessary and wanton inflictions of pain forbidden by the Eighth Amendment are "those that are totally without penological justification." *See Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Greeg v. Georgia*, 428 U.S. 153, 183 (1976). The Supreme Court explicitly stated in *Rhodes*, and affirmed in *Hope*, that "[t]hese principles apply when the conditions of confinement compose the punishment at issue. Conditions must not involve the wanton and unnecessary infliction of pain." *Rhodes*, 452 U.S. at 347. Any reasonable official would know that causing gratuitous pain with no penological justification, and deliberate indifference to such pain, violates the Constitution. *See, e.g., Baze v. Rees*, 553 U.S. 35, 102 (2008) ("The evil the Eighth Amendment targets is intentional infliction of gratuitous pain."). Therefore, the Court denies summary judgment on the grounds of qualified immunity.

## B. Retaliation Claim against Defendant Davis

To prevail on a retaliation claim, a prisoner must show that "the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such

a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Plaintiff must provide more than "his bare assertion" or speculation that an act was retaliatory. *Adams*, 40 F.3d at 74.

Plaintiff claims that Defendant Davis denied him a mattress after his splenectomy in retaliation for filing numerous grievances against him. (Dkt. No. 1 at 4). "[T]here is no constitutional right to participate in grievance proceedings." *Adams*, 40 F.3d at 75. Thus, Plaintiff does not have a claim that he was retaliated against in response to engaging in constitutionally protected activity. However, as explained above, a reasonable jury could find that the retaliatory act itself violated a constitutional right. *Adams* states that this is enough for a prisoner retaliation claim.[4]

In recommending that the Court grant summary judgment on this claim, the Magistrate Judge found that Plaintiff provide provided "nothing other than his own speculation that Lt. Davis denied him a mattress as retaliation." (Dkt. No. 40 at 11). The Court disagrees. Plaintiff provided testimony, by way of his verified Complaint, that Lt. Davis stated that the taking of Plaintiff's mattress "was personal and that he needed to stop filing all that paperwork." (Dkt. No. 1 at 4). This statement by Defendant Davis is direct evidence of retaliatory intent, and combined with the grievances against Davis that Plaintiff has put into the record, enough to

---

[4] Despite this wording of the *Adams* test, the Court can find no cases where an inmate successfully alleged a retaliation claim under the second prong of *Adams*, *i.e.*, where the retaliatory act itself violated a constitutional right. Thus, there is little guidance on how to analyze Plaintiff's retaliation claim further. Elements used to analyze many retaliation claims (e.g., whether the exercise of a constitutionally protected right is a substantial motivating factor of the retaliatory action or whether the retaliation has a chilling effect on the exercise of the constitutional right) do not readily apply to a retaliation claim where the retaliatory act itself violates a constitutional right.

survive summary judgment. Therefore, the Court declines to adopt this section of the R & R and denies summary judgment on this claim.

## C. Medical Indifference Claim Against Defendant Yarborough

### 1. Defendant Yarborough's Status as an Independent Contractor

Defendant Yarborough first complains that the Magistrate Judge did not analyze whether her status as an independent contractor precludes a § 1983 claim against her. (Dkt. No 56 at 2). However, this issue was never raised before the Magistrate Judge. (*See* Dkt. No. 29). Nevertheless, the Court will address it here.

To prevail on a § 1983 claim, a plaintiff must show that the constitutional violation was committed by a person acting under the color of state law. *E.g. West v. Atkins*, 487 U.S. 42, 48 (1988). Yarborough claims that because she is not an employee of the South Carolina Department of Corrections but an independent contractor, she cannot be considered to have acted under the color of state law. (Dkt. No. 56 at 2). Yarborough is incorrect.

The Fourth Circuit has identified three situations where conduct by a private party constitutes state action: (1) where a private party is regulated by the state and "there is either a sufficiently close nexus, or joint action between the state and the private party; (2) when the state has, through extensive regulation, exercised coercive power over, or provided significant encouragement to, the private actor; or (3) when the function performed by the private party has traditionally been an exclusive public function." *S.P. v. City of Takoma Park, Md.*, 134 F.3d 260, 269 (4th Cir. 1998). The third situation is applicable here.

"The Supreme Court made clear in *West* that the provision of medical services to prison inmates is traditionally the exclusive prerogative of the state." *Conner v. Donnelly*, 42 F.3d 220,

224 (4th Cir. 1994) (referring to *West v. Atkins*, 487 U.S. 42 (1988)). In *West*, the Supreme Court held that "a private physician under contract with the State of North Carolina to provide medical services to prison inmates, but not employed directly by the state, nonetheless acts under the color of state law when treating an inmate." *Id.* (citing *West*, 487 U.S. 54-57). "Regardless of the physician's employment relationship with the state, any physician authorized by the state to provide medical care to a prisoner exercises power that is traditionally the exclusive prerogative of the state." *Id.* at 225. In *Conner*, the Fourth Circuit extended *West* to "private physicians who treat state prisoners without the benefit of a contract." *Id.*

The Court finds *West* and *Conner* controlling. The provision of medical services to prison inmates–whether provided by a physician or a nurse–is "the state's exclusive prerogative for the same reason it is its constitutional duty: a prisoner has no alternative means of acquiring medical care other than those provided by the state." *Id.* at 224. Thus, if a healthcare provider demonstrates a deliberate indifference to a prisoner's serious medical needs, the prisoner suffers a deprivation under color of state law. *Id.* at 225; *see also Nelson v. Prison Health Servs., Inc.*, 991 F.Supp. 1452, 1463 (M.D. Fla.1997) (explaining that nurses employed by private company providing medical services for a jail are considered state actors for § 1983 liability).

Yarborough argues that her duties require the use of her nursing training and personal judgment. (Dkt. No. 56 at 2-3). However, the fact that medical services providers "are professionals exercising their own independent professional judgment does not determine whether they act under color of state law when treating prisoners." *Conner*, 42 F.3d at 224 (citing *West*, 487 U.S. 50-52).

Therefore, the Court finds that Defendant Yarborough can be held liable under § 1983 if she was deliberately indifferent to the serious medical needs of Plaintiff.

### 2. Medical Indifference Claim against Defendant Yarborough

The Court finds that there is at least an issue of fact regarding the objective component of Plaintiff's medical indifference claim. There is no dispute that Plaintiff was recovering from a splenectomy. The doctor that performed the surgery stated that Plaintiff could "return to his institution but he *must* have a mattress if he is returned." (Dkt. No. 1-2 (emphasis added)). This mandate by Plaintiff's physician raises an issue of fact as to whether a mattress following Plaintiff's splenectomy was a serious medical need.[5] Furthermore, there is a question as to whether even a lay person would recognize the need for a mattress following abdominal surgery.

The Court also agrees with the Magistrate Judge that there is an issue of fact as to whether Defendant Yarborough acted or failed to act with deliberate indifference. In her objections, Defendant Yarborough first claims that she had no reason to know that Plaintiff did not have a mattress when he returned to SMU. (Dkt. No. 56 at 7-8). Whether a prison official has the requisite knowledge is a question of fact "subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. A defendant is deliberately indifferent if "the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Id.* at 843 n.8. Given Plaintiff's request for mattress and Defendant

---

[5] Defendant Yarborough's awareness or lack of awareness of this medical order is relevant to her state of mind. However, even if Defendant Yarborough was unaware of this order, it still provides evidence regarding the objective medical need for a mattress and the seriousness of this need.

-13-

Yarborough's response that the doctor had not ordered one (as opposed to, "but don't you have one?"), a reasonably jury could conclude that Defendant Yarborough knew or at least strongly suspected that Plaintiff lacked a mattress but "refused to verify" whether he had a mattress.[6] Therefore, an issue of fact exists as to whether Defendant knew or strongly suspected that Plaintiff lacked a mattress.

Next, Defendant Yarborough raises a question of whether she had the authority to order Plaintiff a mattress. She does not actually state that she lacked the authority to order a mattress, but states that (a) she had to follow the orders of the discharging SCDC physician and (b) that this fact "indicates" she did not have the authority to do so. (Dkt. No. 56 at 7). However, other evidence in the record indicates that she may have had the authority to order a mattress without a doctor's order, at least on a temporary basis. On the same day that Defendant Yarborough performed the intake of Plaintiff, another nurse informed Lt. Roberts that Plaintiff needed a bottom bunk until he was seen by a doctor for follow-up.[7] (Dkt. No. 1-3 at 9). There is no definitive evidence on the point, but there is at least an issue of fact on the present record as whether Defendant Yaborough had the authority to order a mattress.

Furthermore, the Magistrate Judge found that while the record was silent as to Yarborough's authority to issue a mattress, "she clearly had the ability to raise the question to

---

[6] Defendant Yarborough's affidavit is silent on whether she knew Plaintiff lacked a mattress. In briefing, Yarborough argues that Plaintiff's request could have been interpreted as a request for an extra mattress. (Dkt. No. 56 at 8). Again, Yarborough does not actually state that this was *her* interpretation of Plaintiff's request but only argues that it is a possible interpretation. The fact that two possible interpretations of the evidence exist only shows that the question is one that should be left to the jury.

[7] After this conversation, Plaintiff states that he was moved to a one-man cell and informed that a mattress could not be located. (Dkt. No. 1 at 4).

those who did have such authority." (Dkt. No. 40 at 9). Defendant Yarborough does not contest that she had the ability to raise the issue with others (*See* Dkt. No. 59), and a reasonably jury could find that her failure to do so was deliberately indifferent.[8]

Finally, Defendant Yarborough argues that her conduct does not "meet the standard for intentional conduct." (Dkt. No. 56 at 10). However, as explained above, Plaintiff need not show that Yarborough acted with the intention to cause harm but with deliberate indifference to a substantial risk of serious harm. *Farmer*, 511 U.S. at 842. The Court finds that there is an issue of fact as to whether Defendant Yarborough acted with deliberate indifference, and, thus, denies summary judgment.

### D. Other Claims

No party has objected to the Magistrate Judge's recommendation that summary judgment be granted as to Plaintiff's remaining claims. The Court agrees with and adopts the R & R as to these claims. With regard to Plaintiff's claim against Defendant Steen, Plaintiff has failed to put forward evidence that Defendant Steen knew or strongly suspected that Plaintiff lacked a mattress. He may have been negligent in not realizing this from the information entered into the SCDC computer system. However, negligence is not enough for a medical indifference claim. *E.g., Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001).

---

[8] Yarborough also states that by noting the mattress request on her entry about her encounter with Plaintiff effectively "raise[d] the question" to others because she knew it would be reviewed and signed by a physician. (Dkt. No. 56 at 8). While this fact may certainly be considered by the jury, it is not enough to survive summary judgment. The Court must view the evidence in a light most favorable to Plaintiff. A jury could find that Yarborough was deliberately indifferent by not raising the issue immediately when she knew that her entry would not be reviewed by a physician for days or, as explained above, by not suggesting a mattress until Plaintiff was seen by a doctor for follow-up.

Plaintiff received a mattress on April 11, 2012, and has been transferred from Lee Correctional Institution to Broad River Correctional Institution; thus, any claims for injunctive relief are moot. Any claims against Defendants in their official capacities are barred by Eleventh Amendment immunity. And Plaintiff has not put forward any evidence of a conspiracy; thus, summary judgment is appropriate on the civil conspiracy claim. Thus, the Court grants summary judgment as to these claims.

## IV. CONCLUSION

For the reasons stated above, the Court **ADOPTS** all portions of the R & R, except the portion regarding Plaintiff's retaliation claim. Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment (Dkt. No. 29). The Court **GRANTS** summary judgment in favor of Defendants with regard to Plaintiff's claims against Dr. Steen, Plaintiff's claims against Defendants in their official capacity, Plaintiff's claims for civil conspiracy, and any requests for injunctive relief. The Court **DENIES** summary judgment with regard to Plaintiff's conditions of confinement claim against Defendants Davis and Durant, Plaintiff's retaliation claim against Defendant Davis, and Plaintiff's deliberate indifference claim against Defendant Yarborough.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Judge

March 13, 2014
Charleston, South Carolina